# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| SUSAN M. HARRIS, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil No. 3:25cv270 (DJN) |
| DEPARTMENT OF TREASURY OF THE COMMONWEALTH OF VIRGINIA, *et al.*, | ) |
| *Defendants*. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

John E. Thomas, Jr. (VSB No. 81013)
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102
T: (703) 712-5407
F: (703) 712-5217
jethomas@mcguirewoods.com

Daniel P. Peyton (VSB No. 97161)
McGuireWoods LLP
800 East Canal St.
Richmond, VA 23219
T: (804) 775-1228
F: (804) 698-2198
dppeyton@mcguirewoods.com

*Counsel for Defendants*

Defendants Department of Treasury of the Commonwealth of Virginia ("Treasury"), Office of the Attorney General of the Commonwealth of Virginia ("OAG"), Attorney General of Virginia Jason Miyares, and State Treasurer of Virginia David L. Richardson, in their official capacities (collectively, "Defendants"),[1] by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint filed by Plaintiff Susan M. Harris ("Harris").

## I. INTRODUCTION

Harris alleges she was fired because of her sex, age, and disability, in retaliation for taking disability leave, and in retaliation for suing former Attorney General of Virginia Mark Herring nearly four years earlier. Harris's Complaint suffers from numerous infirmities, warranting dismissal.

*First*, the Court lacks personal jurisdiction over OAG because it is an office of a constitutional officer.

*Second*, the Court lacks subject matter jurisdiction over all claims except for those brought under Title VII, because sovereign immunity protects Defendants from Harris's VHRA, ADA, and ADEA Claims.

*Third*, Harris fails to state a claim against Richardson and Treasury because, as a matter of Virginia constitutional and statutory law, Treasury did not and could not employ Harris (and, regardless, she otherwise fails to allege joint employment).

*Fourth*, Harris fails to state a claim for sex or age discrimination, disability discrimination, or sex or age retaliation.

---

[1] Between the Civil Cover Sheet (ECF No. 1-1), the caption of the Complaint (ECF No. 1), and the party allegations (Compl. ¶¶ 3–4), a discrepancy exists over whom Harris has named as defendants. Out of an abundance of caution, Defendants include all named.

II.     **RELEVANT FACTUAL BACKGROUND**[2]

Harris worked as an Assistant Attorney General for about twenty years, from her hiring in 2000 until the termination of her employment in 2023.  See Compl. ¶¶ 1, 19–20.

In February 2020, Harris—represented by the same lawyer representing her today—sued the OAG for the first time for sex-based wage and age discrimination and retaliation.  Id. ¶ 21 (citing Harris v. Herring, No. 3:20-cv-96 (E.D. Va. filed Feb. 13, 2020)).  Herring filed a Motion to Dismiss, correctly arguing that Harris's age discrimination and age retaliation claims were barred by the doctrine of sovereign immunity.  See Herring, No. 3:20-cv-96 (E.D. Va. filed Mar. 10, 2020).  In response, recognizing the lack of subject-matter jurisdiction, Harris dropped the age discrimination and age retaliation claims.

In granting summary judgment for Herring on the remaining claims, Judge Gibney found Harris had "not identified a similarly situated male comparator whom the OAG paid more.  And her disparate treatment and retaliation claims fail because the OAG did not take adverse action against her."  Herring, 2021 WL 100651, at *1 (E.D. Va. Jan. 12, 2021).[3]

In January 2020, the OAG assigned Harris to support Treasury's unclaimed property division.  See Compl. ¶ 22.  Harris was "appointed by and serve[ed] at the pleasure of the Attorney General," with supervision and all human resources functions provided by OAG.  See Compl. Ex. 1.

---

[2]     These facts are taken from the Complaint and accepted as true solely for presenting this Motion under Federal Rule of Civil Procedure 12(b).  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3]     "Of course, the [prior] court action is a matter of public record and may therefore be considered on a motion to dismiss."  Spirito v. Peninsula Airport Comm'n, 350 F. Supp. 3d 471, 479 (E.D. Va. 2018); see also Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007) (acknowledging courts may consider matters subject to judicial notice when evaluating a motion to dismiss); Fed. R. Evid. 201(d).

On May 3, 2022, OAG promoted Harris to Senior Assistant Attorney General and she performed her job through March 2023.  See Compl. ¶¶ 27–29.

On March 18, 2023, Harris suffered an out-of-work injury.  See id. ¶¶ 31–38.  She took leave from work until she could return full-time on September 5, 2023.  See id. ¶¶ 38, 50.

While Harris was on leave, Treasury conducted a "comprehensive review of their legal needs" and determined "that [it] no longer require[d] the services of a full-time attorney."  Compl. Ex. 5.  On August 14, 2023, Richardson emailed Deputy Attorney General Leslie Haley and stated that Treasury was "anxious to cut our ties with [Harris], something we would be doing regardless of her medical issues."  Compl. ¶ 42.

Although OAG informed Harris while she was on leave that Treasury would no longer require the services of a full-time attorney, OAG did not terminate her employment until she returned to work, on September 5, 2023.  See Compl. ¶¶ 46, 50.  Harris expressed an interest in transferring within OAG.  See Compl. ¶ 53.  Although Harris previously thought there were many openings at OAG, OAG had filled them over the summer.  See Compl. ¶ 55.  Haris alleges the positions had been previously filled with males who were younger than her, a 68-year-old.  See Compl. ¶¶ 61, 64, 76.

Harris's Complaint offers further allegations about openings that were filled before her termination (see, e.g., Compl. ¶ 56 (discussing openings during the summer of 2023)) or opened after her termination (see, e.g., Compl. ¶ 56 (discussing openings in October 2023)).  Harris fails to allege, however, she applied for any such jobs.

3

### III. ARGUMENT

#### A. The OAG is Not a Proper Party and Should Be Dismissed.

Harris bears the burden of establishing personal jurisdiction over each defendant. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). Entities that are not individuals, corporations, partnerships, or unincorporated persons, and are not persons capable of being sued under Fed. R. Civ. P. 17(b) are properly dismissed from the action pursuant to a 12(b)(2) motion. See Easter v. Virginia, 2006 WL 5915495, at *2–3 (E.D. Va. Sept. 5, 2006), aff'd sub nom. Easter v. U.S. Dep't of Health & Hum. Servs., 222 F. App'x 255 (4th Cir. 2007).

Under Virginia law, the Attorney General is a constitutional officer. See Va. Const. art. V, § 15; see also Blair v. Marye, 80 Va. 485, 490 (1885) (noting that position of attorney general is of constitutional creation). As a result, his office is not capable of being sued. See Reardon v. Herring, 191 F. Supp. 3d 529, 532 n. 1 (E.D. Va. 2016) (dismissing OAG and stating, "OAG is not sui juris and thus cannot be sued"). Because the proper defendant in this suit is Attorney General Miyares in his official capacity, and not the OAG, the Court should dismiss OAG from this suit. See id. at 532.

#### B. The Court Should Dismiss Harris's VHRA, ADA, and ADEA Claims Because the Court Lacks Subject Matter Jurisdiction Over Them.

The Court should dismiss Counts I, III, IV, and VI in their entirety, and the VHRA claim within Count II, because the Defendants enjoy sovereign immunity from ADEA, ADA, and VHRA claims. Sovereign immunity deprives a court of subject matter jurisdiction over a claim. See United States v. Jones, 225 F.3d 468, 469 (4th Cir. 2000). Harris bears the burden of establishing subject matter jurisdiction. See U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347–48 (4th Cir. 2009).

4

Sovereign immunity "pose[s] a bar to federal jurisdiction over suits against nonconsenting States." Alden v. Maine, 527 U.S. 706, 730 (1999). Because the States necessarily act through their agents, the States' sovereign immunity extends to their "agents and . . . instrumentalities." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); see also Association of Am. R.R. v. Hudson, 2024 WL 1626105, at *20 (E.D. Va. Apr. 15, 2024) (Novak, J.) (citing Hutton v. South Carolina Ret. Sys., 773 F.3d 536, 541 (4th Cir. 2014)). Sovereign immunity also shields officials sued in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Association of Am. R.R., 2024 WL 1626105, at *20.

The same is true as a matter of state law. "The doctrine of sovereign immunity is 'alive and well' in Virginia." Fines v. Rappahannock Area Cmty. Servs. Bd., 301 Va. 305, 313 (2022). Under that doctrine, "the Commonwealth is immune from liability for damages and from suits to restrain governmental action or to compel such action." Ligon v. Cnty. of Goochland, 279 Va. 312, 316 (2010). Agencies of the Commonwealth are also "clothed with the Commonwealth's immunity." Fines, 301 Va. at 313. Thus, as agencies of the Commonwealth, the Defendants enjoy sovereign immunity. See, e.g., McSheffrey v. Powers, 2023 WL 4043939, at *6 (E.D. Va. Feb. 7, 2023) (Davis, C.J.) (attorney general entitled to sovereign immunity); Va. Const. art. V, § 15 (establishing office of Attorney General); Va. Code Ann. § 2.2-1800 (establishing Department of Treasury under State Treasurer appointed by the Governor).

The Commonwealth's sovereign immunity can be overcome only if: (1) the legislature lawfully abrogates state sovereign immunity or the Commonwealth consents to suit or statutorily waives immunity; or (2) a plaintiff seeks prospective injunctive relief against an appropriate official under the Ex parte Young doctrine. See e.g., Va. Off. for Prot. & Advoc. v. Stewart, 563

5

U.S. 247, 253 (2011); Ex parte Young, 209 U.S. 123 (1908); Jones v. Va. Commonwealth Univ., 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021) (Gibney, J.).  None of these exceptions apply here.

*First*, the legislature has not waived or abrogated sovereign immunity under the VHRA, the ADA, or the ADEA, nor has the Commonwealth consented to suit under those statutes.  See Fogleman v. Commonwealth, 2023 WL 6065593, at *3–4 (Va. Ct. App. Sept. 19, 2023) ("[T]he General Assembly did not expressly or by necessary implication waive sovereign immunity under the VHRA."); Mais v. Albemarle Cnty. Sch. Bd., 657 F. Supp. 3d 813, 827 (W.D. Va. 2023) (dismissing claim because "the VHRA does not contain an explicit waiver of sovereign immunity for Commonwealth agencies"); Nwoga v. N. Virginia Mental Health Inst., 2025 WL 259203, at *4 (E.D. Va. Jan. 21, 2025) (Trenga, J.) (dismissing claim because "the ADA [does not] abrogate Virginia's right to sovereign immunity" and denying request to amend to add VHRA claim on the same ground); Bd. of Trs. Of Univ. of Alabama v. Garrett, 531 U.S. 356, 374 n.9 (2001) ("Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I [of the ADA] . . . ."); Passaro v. Virginia, 935 F.3d 243, 248 (4th Cir. 2019) ("[T]he Commonwealth has not waived its sovereign immunity from private lawsuits under Title I of the ADA in either state or federal court."); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) ("[T]he ADEA does not validly abrogate the States' sovereign immunity . . . ."); Michael v. Va. Commonwealth Univ., 2018 WL 3631888, at *5 (E.D. Va. July 31, 2018) (Gibney, J.) ("Congress did not validly abrogate states' immunity through the ADEA.").

*Second*, Ex parte Young does not apply.  The doctrine "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not one against the state for purposes of the Eleventh Amendment."  Biggs v. N.C. Dep't of Pub. Safety, 953 F.3d 236, 242 (4th Cir. 2020).

6

As an initial matter, Harris cannot rely on Ex parte Young to bring a state law claim under the VHRA. See, e.g., Antrican v. Odom, 290 F.3d 178, 186–87 (4th Cir. 2002) ("[T]he Ex parte Young exception requires the allegation of an ongoing violation of *federal* law" and "does not apply to actions against State [defendants] seeking to compel their compliance with *State* law.") (emphasis added); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); Bragg v. West Va. Coal Ass'n, 248 F.3d 275, 297 (4th Cir. 2001).

Furthermore, in cases like this one, where a plaintiff alleges she was terminated from employment and seeks monetary relief, Ex parte Young does not apply. See, e.g., Butrick v. Dine Dev. Corp., 2024 WL 4643258, at *6 (E.D. Va. Oct. 30, 2024) (Hudson, J.) ("While the effects of this violation may still linger—as they do with most injuries—Plaintiff fails to demonstrate a *continuing* violation of federal law that would warrant injunctive relief."). In this case, Harris seeks paradigmatic retrospective relief—"back wages," "liquidated damages," and "money damages." See Compl. ¶¶ 104–08. Yet, it is blackletter law that the Ex parte Young exception does not permit claims for damages; it applies only to prospective relief. See Hutto v. South Carolina Ret. Sys., 773 F.3d 536, 549 (4th Cir. 2014) ("State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State.") (collecting cases); Caldwell v. Nottoway Cnty., 2023 WL 4850156, at *8 (E.D. Va. July 28, 2023) (Hudson, J.) ("Back pay and benefits, compensatory damages, and punitive damages are all retrospective, monetary relief and barred under Ex parte Young doctrine.").

In the same vein, Harris cannot evade sovereign immunity with a request for a declaration that Defendants' past actions violated her rights. Compl. ¶ 102; Int'l Coal. for Religious Freedom v. Maryland, 3 F. App'x 46, 49 (4th Cir. 2001) (explaining that Ex parte Young "provides *only* for prospective injunctive relief from a continuing violation of federal law, and not for declaratory

7

relief for a past violation of federal law"); MediGrow, LLC v. Natalie M. Laprade Med. Cannabis Comm'n, 487 F. Supp. 3d 364, 373 (D. Md. 2020).

Nor does Harris's prayer to enjoin Attorney General Miyares "from engaging in such unlawful employment practices" save her claims. Compl. ¶ 103. Harris has not set forth a single allegation that Miyares continues to discriminate or retaliate against her. Thus, there is no ongoing violation of federal law. See Butrick, 2024 WL 4643258, at *6 ("Defendants [allegedly] violated federal law the moment they interfered with Plaintiffs [sic] rights under the FMLA—i.e., the moment Defendants 'reduced Plaintiff's employment responsibilities, hired her replacement, and ultimately terminated her employment.' The last point in time that Defendants violated federal law was August 19, 2023, when Plaintiff's employment was terminated.") (citation omitted); Antrican, 290 F.3d at 184 ("*Ex Parte Young* . . . allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from *engaging in future conduct* that would violate the Constitution or a federal statute.") (emphasis added).

Accordingly, the Court lacks subject matter jurisdiction over Counts I, III, IV, VI, and the VHRA claim within Count II, and should dismiss them.[4]

### C. Harris's Complaint Fails to State A Claim.

#### 1. Legal Standard Under Federal Rule of Civil Procedure 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, Harris must provide sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[4] As discussed above, Harris and her attorney previously sued OAG, and her age-related claims were the subject of a motion to dismiss on sovereign immunity grounds. Given this procedural history, it is unfortunate that Harris (herself an attorney) and her counsel are advancing the same causes of action knowing the Court lacks subject matter over them. Such an approach not only wastes judicial resources and the taxpayer-funded time of counsel, but also circumvents the principles animating Virginia Rule of Professional Conduct 3.1.

(2007). Her allegations must therefore allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009).

It is not enough for factual allegations to be "merely consistent with" misconduct, or for misconduct to be "conceivable." Twombly, 550 U.S. at 557. Rather, "a complaint must state facts demonstrating that the defendant's liability is plausible, not merely possible." Liberty Couns., Inc. v. GuideStar USA, Inc., 737 F. App'x 171, 172 (4th Cir. 2018). And the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### 2. Harris Fails to State Any Claim Against the Department of Treasury.

The Court should dismiss Treasury because Treasury did not employ Harris. Virginia law establishes that employees of a constitutional officer are employed by that officer alone. Even if that were not the case, Harris fails to plausibly allege joint employment.

#### a. Virginia Constitutional and Statutory Law Forecloses that Treasury Could Employ Harris.

As a matter of constitutional and statutory law, ***only*** the OAG has the authority to employ an Assistant Attorney General. The Virginia Constitution establishes the office of the Attorney General. See Va. Const. art. V, § 15. Only the Attorney General may hire assistant and deputy Attorneys General. See Va. Code Ann. § 2.2-501. The Virginia legislature vests the authority and responsibility to provide legal services for state agencies solely with the Attorney General. See Va. Code § 2.2-507 ("All legal service in civil matters for the Commonwealth, the Governor, and every state department . . . shall be rendered and performed by the Attorney General."; "no regular counsel shall be employed for or by . . . any state department."). Thus, as a matter of constitutional and statutory law, Harris was employed only by OAG, and not by Treasury.

9

In similar contexts, Virginia courts have recognized that employees of a constitutional officer are solely employees of that constitutional officer, and not any other government entity to which they provide services. See Kellum v. Isle of Wight Cnty., Virginia, 2020 WL 1304083, at *3 (E.D. Va. Mar. 19, 2020) (holding employee of local elected Commissioner of Revenue was not employee of county, though county provided human resources, payroll, and other functions for employee); Roop v. Whitt, 289 Va. 274, 280 (2015) (holding sheriff's deputy, as employee of constitutional officer, was not local employee).

### b. Harris's Allegations Do Not Establish Treasury Employed Her.

To the extent Harris conclusorily alleges she was "jointly employed" by both OAG and Treasury—which she cannot as a matter of law for the reasons discussed above—her Complaint fails to allege sufficient facts to state such claim.

Courts in this circuit analyze joint employment claims by considering nine factors:

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

>(9) whether the individual and putative employer intended to enter into an employment relationship.

Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 414 (4th Cir. 2015). No factor is dispositive and the issue of control "remains the 'principal guidepost.'" Id. Of the nine, the first three factors "are the most important." Id.

Here, the first three factors heavily favor a finding that Treasury was not her joint employer. Harris's allegations clearly establish that OAG alone had the authority to hire and fire her. Harris was hired *by OAG* in 2000. See Compl. ¶ 19. The *OAG* assigned her in 2020 to Treasury. See Compl. ¶ 22. When Defendants terminated the MOU that furnished her position to Treasury, it was *OAG—not Treasury*—that determined whether any other positions existed for her. See Compl. ¶¶ 42–55. When Treasury "deemed it unnecessary to have a full-time counsel (from the OAG) assigned to it," *Treasury was powerless* to fire Harris and instead merely informed OAG that it would cancel the MOU. See Compl. ¶¶ 9, 42. After Treasury terminated the MOU, "Harris returned to work" at the *OAG* and met with *OAG* HR personnel regarding her future. See Compl. ¶¶ 49–55. And it was *OAG* that eliminated her position. See Compl. ¶ 52; Compl. Ex. 5.

The MOU between Defendants bolsters that Treasury did not employ Harris. As to Factor One, the MOU provides that *OAG* "will dedicate one full-time, salaried FTE position to the legal work of [Treasury.]" Compl. Ex. 1. It states the "incumbent is appointed by and serves at the pleasure of the Attorney General." Id. These show that only the OAG had the authority to hire and fire Harris. As to Factor Two, the MOU dictates the attorney's work will be "supervised by the OAG" and their "job performance evaluated" by three supervisors, all of which are deputy or assistant Attorneys General. Id. And although Harris supported Treasury, the Director of Unclaimed Property did not supervise or evaluate her job performance but could merely "consult" with her OAG supervisors to provide feedback. Id.; see also Compl. ¶¶ 24 (supervised by OAG),

11

28 (Treasury Director of Unclaimed Property stated she worked "independently"). Only Factor Three tips slightly toward Treasury given Treasury furnished an office, phone, and computer. See Compl. Ex. 1. This factor, however, is hardly sufficient to outweigh the other two, let alone the constitutional and statutory law prohibiting Treasury from employing Harris.

As to the other Butler factors, they show that only OAG exercised control over Harris. Supporting Factor Four, the MOU provides that "[t]he OAG will be responsible for payroll administration, including parking and employee benefits, for the incumbent" despite Treasury reimbursing OAG. Compl. Ex. 1; see also Compl. ¶¶ 38 (describing calling OAG Benefits Administrator), 41 (OAG HR determined employment decisions including reviewing requests to return to work). Thus, OAG alone was responsible for Harris's employment records and their administration. The length of time Harris worked for the putative employer, Factor Five, also favors OAG. Harris only supported Treasury under the MOU briefly compared to her total 20-year career at OAG. See Compl. Ex. 1 (MOU effective Jan. 17, 2022); Compl. ¶¶ 31–38 (injury occurring March 18, 2023); Compl. ¶ 19 (20-year career).

Although she was solely assigned to support Treasury (Factor Eight), her duties were clearly distinct from Treasury personnel (Factor Seven). As described above, Harris provided legal services to Treasury, and Virginia law vests the authority to provide legal services to Treasury solely with the OAG. Thus, no Treasury employee has duties akin to hers. Additionally, the feedback from Bradley Earl shows that her role was ancillary to the operations of Treasury employees, in that she provided counsel, legal positions and opinions, research, and document review to support their work processing unclaimed property. See Compl. ¶ 28. Otherwise, Harris has not alleged Treasury provided her with training (Factor Six), or that Treasury intended to enter an employment relationship with her (Factor Nine). On balance, these secondary factors also show

12

that OAG employed Harris, and Treasury did not. See also Leuenberger v. Spicer, 2016 WL 355090, at *13 (W.D. Va. Jan. 28, 2016) (finding County, which was only responsible for partial compensation and providing workspace and equipment, was not plaintiff's employer but Commonwealth's Attorney was because he "was responsible for hiring [plaintiff], supervising her, giving her assignments, setting her pay, evaluating her, disciplining her, and firing her."); Carter v. Dominion Energy, Inc., 529 F. Supp. 3d 525, 543–44 (W.D. Va. 2021) (finding no joint employment by contractor, which merely provided jobsite, where subcontractors supervised plaintiff and ultimately fired him).

Accordingly, Treasury did not employ Harris and should be dismissed.

### 3. Harris Fails to State Any Claim for Sex or Age Discrimination in Counts I and II.

In Counts I and II, Harris asserts a novel theory of age and sex discrimination. Specifically, she does ***not*** allege that after she was terminated OAG hired a younger male attorney to support the Treasury's unclaimed property division. Instead, she claims that OAG hired younger, male attorneys to fill vacant positions to which Harris claims she would have applied had she been fired earlier when those positions were still open. In so doing, she attempts to turn well established employment law precedent upside down.

Bear in mind, Harris does not allege direct evidence of discrimination—such as comments critical of her sex or age. Instead, she pursues a theory that she was treated worse than comparators outside of her protected class. But in a case like this—where a plaintiff claims she was passed over for a job filled by a younger person of the opposite sex—she must allege "that the employer had an open position for which she applied or sought to apply" and that "she was rejected" discriminatorily. McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 584 (4th Cir. 2015); Mitchell v. Nat'l Credit Union Admin., 2023 WL 7285383, at *4 (E.D.

13

Va. Nov. 3, 2023) (dismissing Title VII failure-to-hire claim because plaintiff failed to allege rejection from position).

Harris comes nowhere close to offering this allegation. Instead, she appears to admit that she did not apply for any opening because there wasn't one. See Compl. ¶ 56 (alleging there were openings both before her termination and after her termination, but failing to allege there were openings at her termination). And importantly, to the extent she alleges OAG did have openings for which she was qualified, she is required to allege she applied for such positions, which she fails to do. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001) ("[P]laintiff did not establish a prima facie case of discrimination with regard to openings for which she never formally applied[.]"); Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998) (same); Mitchell, 2023 WL 7285383, at *4 ("In a failure to hire case, this adverse employment action is the rejection of a candidate from a position.").

To find that Harris has stated a claim based on these allegations would permit anyone who wanted a job to sue an employer for failure to hire or transfer if that employer did not have a vacancy for a job they desired. See Mian v. Paukstis, 2018 WL 259806, at *3 (D. Md. Jan. 2, 2018), aff'd, 722 F. App'x 348 (4th Cir. 2018) (dismissing failure-to-hire claim where plaintiff expressed generalized interest in being hired at a time when no positions were open, but did not apply when a position opened later).[5]

For all of these reasons, Counts I and II fail.

### 4. For the State Law Component of Count I, Harris Does not Allege Her Employer Employed Fewer than Twenty Employees.

---

[5] Harris does not, and cannot, allege Defendants had a duty to hold open a vacant position for her to later apply or transfer to once the MOU ended. See, e.g., Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 n.6 (6th Cir. 1987) ("When an employer reduces its work force for economic reasons, it incurs no duty to transfer the employee to another position within the company.").

14

Under the VHRA, for discriminatory discharge claims based on age in particular, the definition of "employer" means "any employer employing more than five but fewer than 20 persons." Va. Code § 2.2-3905. Harris has not alleged that either OAG or Treasury employs "more than five but fewer than 20 persons." Accordingly, the VHRA component of Count I should be dismissed. See, e.g., Michael, 2018 WL 3631888, at *4 (dismissing VHRA claims because plaintiff did not allege VCU employed the requisite number of employees).

### 5. Harris Fails to Allege Disability Discrimination in Count III.

As an initial matter, it is important to articulate precisely the disability-discrimination cause of action Harris brings. In Count III, Harris alleges Defendants intentionally discriminated against her because she broke her arm and nose. Count III does ***not*** allege Defendants terminated her for taking disability-related leave, which would be a form of retaliation, not discrimination. See Kelly v. Town of Abingdon, Virginia, 90 F.4th 158, 170 (4th Cir. 2024) (emphasizing distinction between discrimination and retaliation claims because they "rely on different theories of motive").

The ***only*** allegation Harris makes linking her disability to her termination is in the "Introduction" paragraph. There, she states that Defendants terminated her employment "on the day when she returned to work from a major medical disability." Compl. ¶ 1. The "Factual Background" section does not even make a single conclusory allegation that Defendants terminated Harris because of her disability. And the Count III section contains only a bare recital of the elements of the claim. See Compl. ¶¶ 78–83. Thus, Harris fails to allege any facts plausibly suggesting that Defendants intentionally discriminated against her because she broke her nose and arm when she was at home one weekend nearly six months earlier. See, e.g., Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 234 (4th Cir. 2021) ("[S]imply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard.").

To the contrary, Harris's own allegations reflect she went out on disability leave on March 18, 2023 and returned about six months later, on September 5, 2023. See Compl. ¶¶ 38, 50. That lengthy period shows Defendants generously accommodated her disability and provided her more than twice the twelve-week leave period required by the FMLA. What's more, Harris's own allegations reflect that Treasury determined it no longer needed a full-time general counsel position, and that "cut[ting] ties" was "something [Treasury] would be doing regardless of her medical issues." Compl. ¶ 42; Compl. Ex. 5. Although more than twelve weeks had elapsed at that point, Defendants determined not to interfere with her accommodation and wait for her return to work before terminating her. Compl. ¶ 48. Defendants, of course, were not required to wait and could have terminated her while she was on leave. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 549 (4th Cir. 2006) (holding employer may terminate employee on leave for reasons "unrelated to [her] request for leave").

Accordingly, lacking any factual allegations connecting her injury to her termination, Harris fails to state a claim for disability discrimination in Count III.

### 6. Harris Fails to State Any Claim for Retaliation in Counts IV, V, and VI.

In Counts IV and V, Harris alleges Defendants retaliated against her by firing her because she sued a previous administration for age and sex discrimination nearly ***four years*** earlier. In Count VI, Harris alleges Defendants retaliated against her by firing her because she took medical leave.

To state a claim for retaliation, Harris must allege: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. See, e.g., Laurent-Workman v. Wormuth, 54 F.4th 201, 212–13 (4th Cir. 2022). Harris's Complaint is completely devoid of any allegations

16

supporting the third causation element. Indeed, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (holding three-year gap between protected activity and adverse employment action was too long to support causation element). Lacking any facts connecting her February 2020 lawsuit and her September 2023 termination, she fails to state a claim for retaliation in Counts IV and V. This conclusion is even more apparent given that her prior lawsuit was against a different administration and OAG promoted her after that lawsuit concluded. See Compl. ¶ 27. Count VI fails for the same reason. Harris alleges she was terminated five-and-a-half months after her injury that resulted in her leave of absence. And her Complaint lacks any factual allegations suggesting her termination was causally related to her request for leave. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021) (finding three month lapse too long to establish a causal connection by temporal proximity alone); Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing cases in which courts found three- and four-month lapses too long to imply causation alone). Accordingly, the Court should dismiss Counts IV, V, and VI.

## IV.  CONCLUSION

Because the Court lacks personal and subject matter jurisdiction and Harris fails to state a claim, the Court should dismiss Harris's Complaint in its entirety.

DEPARTMENT OF TREASURY OF THE COMMONWEALTH OF VIRGINIA, OFFICE OF THE ATTORNEY GENERAL OF THE COMMONWEALTH OF VIRGINIA, JASON MIYARES, in his official capacity, and DAVID L. RICHARDSON, in his official capacity
*By Counsel*

*/s/ John E. Thomas. Jr.*
John E. Thomas, Jr. (VSB No. 81013)
MCGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102
T: (703) 712-5407
F: (703) 712-5217
jethomas@mcguirewoods.com

Daniel P. Peyton (VSB No. 97161)
MCGUIREWOODS LLP
800 East Canal St.
Richmond, VA 23219
T: (804) 775-1228
F: (804) 698-2198
dppeyton@mcguirewoods.com

*Counsel for Defendants*

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I filed the foregoing with the Court using CM/ECF, which will send a notification of such filing to:

James B. Thorsen, Esq. (VSB No. 18113)
ThorsenAllen LLP
5413 Patterson Avenue, Suite 201
P. 0. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
jthorsen@thorsenallen.com
*Counsel for Plaintiff*

／s/ John E. Thomas, Jr.
John E. Thomas, Jr. (VSB No. 81013)
MCGUIREWOODS LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102
T: (703) 712-5407
F: (703) 712-5217
jethomas@mcguirewoods.com
*Counsel for Defendants*